PD-1236-14, PD-1237-14 & PD-1238-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/29/2015 1:32:23 AM
Accepted 2/03/2015 11:32:15 AM
ABEL ACOSTA
CLERK

No. **PD-1236-14, PD-1237-14, PD-1238-14**

# IN THE COURT OF CRIMINAL APPEALS

# IN AUSTIN, TEXAS

**Thomas Lee Nix, Petitioner,**

**Vs.**
**The State of Texas, Respondent.**

---

## PETITION FOR DISCRETIONARY REVIEW

---

**Thomas Lee Nix**

**Attorney Pro Se**

**7214 County Road 1207**

**Nevada Texas 75173**

**Phone 972-974-5814**

**Email tnix58 @gmail.com**

FILED IN
COURT OF CRIMINAL APPEALS

February 3, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES AND COUNSEL

So the members of this Honorable Court can determine disqualification and recusal, Appellant certifies the following is a complete list of the parties and their Attorneys in accordance with Texas Rule of Appellate Procedure 38.1(a).

**APPELLANT**
Thomas Lee Nix

**DEFENDANT'S COUNSEL AT TRIAL**
Pro se

**APPELLANT'S ATTORNEYS ON APPEAL**
Jeremy F. Rosenthal & Kyle T. Therrian
4500 Eldorado Parkway, Suite 3100 McKinney, Texas 75070

**STATE'S ATTORNEY AT TRIAL**
Leah Mleziva Assistant District Attorney

2100 Bloomdale Road McKinney, Texas 75071

**STATE'S ATTORNEY ON APPEAL**
Haley Hendrix Assistant District Attorney

2100 Bloomdale Road McKinney, Texas 75071

**PRESIDING JUDGE**
Honorable Lance Baxter, County Court at Law #3

2100 Bloomdale Road McKinney, Texas 75071

**MEMORANDUM OPINION**
Justices Francis, Bridges, and Lang Myers
Opinion by Justice Lang Myers

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL…………………………………..ii

TABLE OF CONTENTS………………………………………………………iii

STATEMENT REGARDING ORAL ARGUMENT……………………………iv

INDEX OF AUTHORITIES……………………………………………...............v

PETITION FOR DISCRETIONARY REVIEW………………………....…...…1

STATEMENT OF THE CASE…………………………………..………...2

STATEMENT OF FACTS…………………………………...…….……6

GROUNDS FOR REVIEW……………………………..……...................6

 I. Appellant's Sixth Amendment Confrontation Rights were violated by Trial Court's Admission of an Improperly Authenticated, Unoriginal Compilation of Selected Highlights from Multi-Camera Footage. ……………………….……….5

II. Appellant was Unconstitutionally Denied a Right to Court Appointed Counsel and Was Forced to Proceeded to Trial Pro Se…………………………………5

III. The Trial Court Erred in Failing to Continue the Trial and Afford Appellant an Opportunity to Secure the  Attendance of a Necessary and Material Witness.....5

IV. The Trial Court Erred in Admitting Any Evidence Discovered After Officers Unlawfully Detained  Appellant...........................…………………....……….6

 ARGUMENT………………………………………………………8

PRAYER FOR RELIEF…………………………………….………….....17

CERTIFICATE OF SERVICE…………………………………….….....17

CERTIFICATE OF COMPLIANCE……………………………………17

LETTER TO THE COURT…………………………………………………18

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, having no legal background, would be willing to present oral argument to the Court of Criminal Appeals if Justices desire more information or evidence to clarify statements made by Appellant in this Petition For Discretionary Review.

# INDEX OF AUTHORITIES

## CASES

Derichsweiler v. State, 348 S.W.3d 906 (Tex. Crim. App. 2011)……………..……5
Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979)………….5
McFatridge v. State, 309 S.W.3d 1 (Tex. Crim. App. 2010)………………......…5, 8
Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed 2d 889 (1968) ..........................5, 11
Travis v. State, No. 05-92-02863, 1995 Tex. App. LEXIS 3706 (Tex. App. –Dallas, 1995)…………………………………………………………………………….....9
U.S. v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581 (1981)………...............................14
Gonzales v. State, 304   S.W.3d 838, 842-43 (Tex. Crim. App., 2010)……………..14
 Darty v. State, 193 S.W.2d 195  (Tex. Crim. App., 1946)…………………………12

## STATUTES

Tex. R. Evid. 106............................................................... …………………….9
Tex. R. Evid. 901………………………………………………………………….8
Tex. Code  Crim. Proc § 26.04……………………………………………...…10
Tex. Code  Crim. Proc § 2913……………………………………………………11
Tex. Code Crim. Proc. § 38.23………………..…………………………………...15
Tex. Code. Crim. Proc §28.01…………………………………………………..11
Fourth Amendment to the U.S. Constitution………………………………………..14
Sixth Amendment to the U.S. Constitution……………………………………14

**IN THE COURT OF CRIMINAL APPEALS**

**IN AUSTIN, TEXAS**

**Thomas Lee Nix, Petitioner,**

**Vs.**
**The State of Texas, Respondent.**

---

**PETITION FOR DISCRETIONARY REVIEW**

_____

**Thomas Lee Nix**

**Attorney Pro Se**

**7214 County Road 1207**

**Nevada Texas 75173**

**Phone 972-974-5814**

**Email tnix58 @gmail.com**

1

**STATEMENT OF THE CASE**

**OFFENCES**

Appellant was charged with Resisting Arrest, alleged to have occurred on March 21, 2010. (C.R.10). On June 20, 2011, Appellant's case was set for jury trial on August 25, 2011. (C.R. at 4). On August 26, 2011, Appellant's case was reset for jury trial on November 7, 2011. (C.R. at 26). Appellant was prosecuted and tried for two related offenses simultaneously: Unlawful Possession/Use of Inhalant and Indecent Exposure. It appears the Trial Court used certain documents and requests filed under a single cause number as applicable to all three cases.

**PRE-TRIAL MOTIONS**

On October 11, 2011, Appellant filed several pro se trial motions and were ruled on accordingly: a motion to transcribe voir dire and argument—GRANTED; a motion to disclose expert witnesses—GRANTED; a motion for witness criminal records—GRANTED; a discovery motion—SIGNED; a motion for witness statements GRANTED (at time of cross examination); a motion for jury punishment—GRANTED; a motion for discovery of witnesses— GRANTED (20 days before trial); a motion in limine—NO RULING; a Brady motion—GRANTED; a 404(b) motion—GRANTED (C.R. 30-52).

**COURT-APPOINTED ATTORNEY**

On March 23, 2010, Appellant appears to have requested court-appointed representation for the first time, while incarcerated in the Collin County Jail. On this date, Appellant was denied a Court Appointed Attorney in an "Indigency Flow

Sheet" appearing in the record for Cause No. 003-82321-10 (Resisting Arrest) (003182321-10 C.R. at 7). On June 4, 2010, appearing in the record for cause no. 003-82321-10 ( Resisting Arrest) (003-82321-10 C.R. at 14). On June 17, 2010, a second denial for court-appointed representation in a new "Indigency Flow Sheet." (003-82321-10 C.R. at 15). 10 C.R. at 16 cause no. 003-82321 (Resisting Arrest) (003-82321-3) On November 3, 2011 a pre-trial hearing was held. (I R.R. Supp at 1). During the hearing the Trial Court personally took up the matter of appointed counsel and Appellant proceeding pro se. The Trial Court questioned Appellant on his intent to proceed to trial without a lawyer. (I R.R. Supp. at 4). Appellant indicated that he had requested a court-appointed attorney but was denied. (I R.R. Supp. at 4). Appellant indicated he was not prepared to go to trial and requested a continuance which was denied. (I R.R. Supp. at 5).

**REQUEST FOR CONTINUANCE**

During the pre-trial hearing on November 3, 2011, the Court heard Appellant's complaints regarding the State's production of Brady material in response to his pre-trial motion. (I R.R.Supp. at 7). Appellant explained that he expected the State to produce unedited or uncut surveillance footage as opposed to version of footage that was provided. (I R.R. Supp. at 7-9). Appellant indicated that, in order to be satisfied with proceeding to trial, the State would either have to produce what he was requesting or he would have to serve a subpoena on a witness he believed could have possession of the unedited video. (I R.R. Supp at 9). The Court ordered the State to make further inquiry into the matter. (I R.R. Supp at 8). On the same date, Appellant applied for a subpoena for Dellyn Lohmar, the manager of the

3

motel in which he was arrested. (003-82321-10 C.R. at 53). On the morning of trial, Appellant had not been provided with unedited video footage and his subpoena had not been served. (II R.R. at 10-12) (003-82321-10 C.R. at 54). Appellant again asked the court for a continuance which was again denied after objections from appellant. The Trial Court proceeded to trial. After the jury was sworn, the attorney for the State disclosed that she had learned of an individual named "Larry" as the person who downloaded footage from the video servers. (II R.R. at 70). On the second day of trial after the close of the State's evidence, Appellant's witness had not been served and he was not in possession of the evidence he had requested. Appellant requested a continuance which was denied. (III R.R. at 9).

**TRIAL**

On November 7, 2011 voir dire was completed, the jury was empanelled, and testimony was presented (II R.R. at 67). On November 8, 2011 arguments were presented and the jury deliberated. (III R.R.13-20) The jury returned with a guilty verdict on November 8, 2011 (III R.R.at 21). The Court immediately proceeded to punishment phase (III R.R. at 22). The jury returned a sentence of 1 year confinement and $0.00 fine. (C.R. 71). A motion for new trial was filed on November 11, 2011. (C.R. 73). The State filed an objection to Appellant's motion for new trial on December 12, 2011. (C.R. 84-5). Appellant filed his notice of Appeal on January 13, 2012. (C.R. 88).

**ISSUES PRESENTED**

I. Appellant's Sixth Amendment Confrontation Rights were violated by Trial

4

Court's Admission of an Improperly  Authenticated, Altered, and Edited Unoriginal Compilation of Selected Highlights from Multi-Camera Footage

II. Appellant was Unconstitutionally Denied a Right to Court Appointed Counsel and Forced to Proceed to Trial Pro Se.

III. The Trial Court Erred in Failing to Continue the Trial and Afford Appellant an Opportunity to Secure the  Attendance of a Necessary and Material Witness

IV. The Trial Court Erred in Admitting Any Evidence Discovered After Officers Unlawfully Detained Appellant.

## STATEMENT OF FACTS

On March 21, 2010, Appellant was staying at the Best Western Inn in Wylie TX. Appellant checked into motel because the weather had become too dangerous for Appellant to continue driving home in the blizzard conditions. While trying to enter door from outside entry, Appellant slipped and fell on ice causing pants to become soaked. He then hung them over a chair in his room and moved it by the heater to dry them. Appellant made several trips to vehicle to retrieve items from vehicle in shirt and boxers as clothes were wet. At no time did Appellant do anything that could be considered lewd. Appellant encountered Leticia Barron while making trip to vehicle. Argument ensued and Appellant went back to room after both persons exchanged opinions of each other. A while later Appellant was getting ready to leave and was getting into shower when he heard a knock at door. After looking thru peephole and seeing housekeeping carts at each side of door, he believed housekeeping was there to clean room. He opened door slightly to tell who he believed were housekeepers that he would be leaving after he showered. He was then grabbed and pulled out of room and into hallway and was beaten unmercifully by two Wylie Police officers. Suffering from concussion, broken ribs, two broken fingers along with black eyes and cuts and contusions on face and body. Instead of receiving medical attention, was handcuffed and thrown in police cars and transported to Collin County Detention Center and charged with five crimes.

## GROUNDS FOR REVIEW

I. **Evidence was Insufficient to Convict Appellant of Intentionally Resisting Arrest**
Appellant was in his room when officers pulled him from his room while hiding

6

behind housekeeping carts leading him to believe housekeepers were at door. At no time did officers announce themselves as police. Therefore no rational fact finder could have concluded Appellant resisted an arrest intentionally.

**Appellant's Sixth Amendment Confrontation Rights were violated by Trial Court's Admission of an Altered, Edited and Improperly Authenticated, Unoriginal Compilation of Selected Highlights from Multi- Camera Footage**

Appellant was denied his Sixth Amendment right to cross-examine a competent witness about the reliability and accuracy of an altered, edited and unoriginal video containing highlight footage from a multi-camera surveillance system. Appellant objected stating it had been altered and edited to mislead the jury from the truth. Appellant demonstrated that admission of this duplicate was unfair, as is required under the Best Evidence Rule, because he had no way of obtaining original uncut footage to allow the jury a true depiction of events and entering them into evidence on his own.

II. **Appellant was Unconstitutionally Denied a Right to Court Appointed Counsel and Was Forced to Proceed to Trial Pro Se**

Appellant was denied his Constitutional Right to Court Appointed Counsel when the Trial Court misapplied the legal standards for determining indigence and appointment of counsel. Appellant was denied court-appointed representation on several occasions by erroneously employing an income-only single factor analysis.

III. **The Trial Court Erred in Failing to Continue the Trial and Afford**

7

**Appellant an Opportunity to Secure the Attendance of a Necessary and Material Witness**

Appellant indicated his dissatisfaction with proceeding to trial during the pre-trial hearing and the State was instructed to make further inquiry of its witnesses. A trial court is required to continue when the prejudice to the defendant in proceeding to trial outweighs any burden upon the court or unfairness to the State. The Trial Court's decision to proceed to trial was error because the record fails to reflect any countervailing considerations taking precedence over Appellant's prejudicial lack of necessary evidence. On the day of trial, Appellant's subpoena had not been served and at that time he requested a continuance. The trial Court's denial of this request was erroneous.

IV. **The Trial Court Erred in Admitting Any Evidence Discovered After Officers Unlawfully Detained Appellant**

Art. 2.03. NEGLECT OF DUTY.

(b) It is the duty of the trial court, the attorney representing the accused, the attorney representing the state and all peace officers to so conduct themselves as to insure a fair trial for both the state and the defendant, not impair the presumption of innocence, and at the same time afford the public the benefits of a free press.
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722. Amended by Acts 1967, 60th Leg.,p. 1733, ch. 659, Sec. 3, eff. Aug. 28, 1967

**ARGUMENT**

The trial court admitted, over Appellant's authentication and Best Evidence objections, an altered, edited highlight compilation of multi-camera surveillance footage from the Best Western in Wylie. (II R.R. at 94-97). Appellant received

8

video compilation from District Attorney at a previous court setting on August 26, 2011. He expressed his concerns to the court that the video had been altered from the original and gave a false impression of the events that occurred. (District Attorney stated she would have expert testify the video had not been altered if she were to admit it as evidence for trial) There was no expert at trial to verify it had not been tampered with but was admitted after Appellants objections were denied. Before trial began Appellant expressed his desire to have original, unaltered, unedited footage from each camera as opposed to the compilation of clips provided to him by the District Attorney. Appellant also explained his lack of success in obtaining the same through requests to the District Attorney and Best Western. (II. R.R. at 10); (IR.R. Supp.at 7-9). At trial, the state was permitted to admit the multi-camera compilation footage through Leticia Barron. She had no knowledge of the video production, editing and compilation. Ms. Barron was not capable of authenticating this video under Tex. R. Evid. 901. Ms. Barron was not competent to testify as an absentee witness with knowledge of the process of generating the video compilation. She did not operate the equipment nor was she involved in the video creation. Accordingly, it was an error constituting an abuse of discretion to admit video into evidence over Appellant's authentication objection. See Travis v. State No. 05-92- 02863, 1995 Tex. App. LEXIS 3706 (Tex. App. –Dallas, 1995) (not selected for publication) Appellant's theory of the case and what the original footage would show is apparent throughout the record: officers hid behind objects and pulled him from his room. (II R.R. at 10-11, 82, 142-43). Appellant notes for the record his struggle with the State and Best Western to

9

obtain this footage. (II R.R. at 10). Because the State did not disclose the identity of the proper person to whom a subpoena duces tecum for original footage should be directed. Appellant did not have the ability to offer original footage pursuant to Tex. R. Evid. 106. This amounted to an unequal access making it "unfair to admit the duplicate in lieu of the original." The admission of the multi-camera video compilation over Appellant's Best Evidence objections was an error which constituted an abuse of discretion. Appellant was harmed by these errors and was effectively denied his Sixth Amendment right to challenge reliability of evidence through the person who prepared this video compilation in anticipation of trial, a member of the Wylie PD as they were the only entity with access to video equipment as Best Western had no way to access the surveillance equipment. Only a warrant by Wylie PD would enable access to copy any video files contrary to statements made by officers at trial. The jury was permitted to view a group of video clips which had been altered and edited showing Appellant in hallway (none showing Appellant committing any type of offense) leading up to the altercation with officers. Appellant was denied video footage that would prove: (1) that officers forcibly removed Appellant from his room and therefore Indecent Exposure was not knowingly or intentionally, (2) that Resisting Arrest was used to cover up officer's use of Excessive Force, (3) made forcible entry into his hotel room which was unconstitutional. Accordingly, the convictions in this case should be reversed based on the erroneous admission of video footage.

II. **Appellant was Unconstitutionally Denied a Right to Court Appointed Counsel and was Forced to Proceeded to Trial Pro Se**

The sole factor for denying Appellant a Court-appointed attorney appears be

income exceeding 125% of the 2008 federally determined poverty level. Income below this mark was one of several sufficient, but not necessary, conditions under which a person qualified for court-appointed representation under the then-existing Collin County Courts indigent defense plan. See "Collin County Courts Plan as of 3/23/2010 and 11/3/2011." Texas Indigent Defense Commission. https://tidc.tamu.edu/IDPlan/ViewPlan.aspx . On June 4, 2010, in the related cause number 003-82321-10 (Resisting Arrest), On June 17, 2010, another denial applying the erroneous income- only standard. (003-82321-10 C.R. at 15).

During the pre-trial hearing held on November 3, 2011, the court did little to clarify Appellant's eligibility for court- appointed representation under the Collin County guideline. Neither this standard, nor the one applied more than a year before trial, comport with statute, case law or the guidelines adopted by Collin County pursuant to Tex. Code Crim. Proc § 26.04. Specifically, each denial of court-appointed representation makes reference to only a single factor. Both the Collin County Courts Plan and McFatridge envision reference at least more than one single factor. Among other factors provided for in the Collin County Courts' Plan, the Court was required to consider whether Appellant's liquid assets exceeded twice the cost of obtaining competent

11

representation during the periods while he was not incarcerated, Collin County Courts Plan 3.02 (d), supra, or $2,500 during the periods he was incarcerated prior to trial. Collin County Courts Plan 3.03 (a), supra. Moreover, under the Collin County Court's Plan, an individual may be treated as partially indigent, whereby he shall supplement the cost of a court-appointed attorney commensurate with ability to do so. "Collin County Courts Plan" 3.06, supra. Appellant requested the court to consider him for partial indigency and was denied. He also requested Co-Council be appointed as he knew nothing of proper procedure to enable him to conduct any type of reasonable defense. After expressing these concerns to the court he was told the court would allow him leeway and not hold him to the letter of the law. The record contains no indication of why Appellant was not considered for partial indigence. Appellant was effectively denied his Sixth Amendment right.

III. **The Trial Court Erred in Failing to Continue the Trial and Afford Appellant an Opportunity to Secure the Attendance of a Necessary and Material Witness**

A defendant may request a continuance at any time before he announces ready for trial. Tex. Code. Crim. Proc. §28.01 (5). A defendant may also request a continuance after trial has begun upon an unexpected occurrence which could not have been anticipated with reasonable diligence. Tex. Code. Crim. Proc. §

29.13. Denial of a continuance is reversible when the record reflects the denial was erroneous and that the defendant was prejudiced. Gonzales v. State, 304 S.W.3d 838, 842-43 (Tex. Crim. App., 2010). Error lies when the defendant's interest in delay outweighs the court's scheduling considerations and any unfairness to the State. Id. A trial court may consider and appellate court may review an unsworn oral motion for continuance on equitable grounds. See Darty v. State, 193 S.W.2d 195 (Tex. Crim. App., 1946). During the pretrial hearing held in this case on November 3, 2011, Appellant argued that the video provided by the State had been altered and edited at some point in the creation process and would not be able to proceed to trial without the raw unaltered and unedited video footage. (I R.R. Supp. at 7-9). Appellant explained his dilemma with subpoenaing individuals to provide what he believed was discoverable pursuant to his Brady request. Appellant also explained that, in order to be satisfied with proceeding to trial, he would either need the State to produce what he was looking for or secure the same by subpoena. The trial court instructed the State to "make further inquiries of its witnesses."(I R.R. Supp. At 8). On the same date, Appellant applied for a subpoena for Dellyn Lohmar, the general manager of the motel in which he was arrested, anticipating the potential of the State's "further inquiry" proving unsatisfactory. (003-82321-10 C.R. at 53). The morning of trial, the matter was taken up again. Appellant

indicated that his subpoena had not been served and identified the prejudice in proceeding to trial – namely Appellant's lack of missing footage which would prove to be exculpatory. (II R.R. at 10-12). There is no indication in the record how continuing the case pre-trial would have caused a burden on the State or the court. However, a defendant's interest in obtaining unedited video footage which he asserts is exculpatory outweighs both. Constable's failure to timely serve subpoena was unexpected as Ms. Lohmar knew date of trial and offered to take Ms. Barron to court and was told she wasn't needed. Accordingly, both prongs Gonzalez have been met. It was reversible error to deny Appellant's requests for continuance and this case should be reversed on that basis.

IV. **The Trial Court Erred in Admitting Any Evidence Discovered After Officers Unlawfully Detained Appellant**

Both the United States and Texas Constitutions protect against unreasonable seizures. U.S. Const. Amend IV; U.S. Const. Amend XIV; Tex. Const. Art 1 § 9. An officer may conduct a warrantless detention short of a full-blown custodial arrest on the basis of reasonable suspicion. See U.S. v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581 (1981); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968). A detention based on reasonable suspicion requires an officer to have specific articulable facts that, combined with rational inference, would lead him to reasonably conclude that the individual is, has or will soon be engaged in criminal activity. Terry, 392 U.S. at 21-22; Derichsweiler v. State, 348 S.W.3d

14

906, 914 (Tex. Crim. App. 2011). If an officer's detention is without reasonable suspicion evidence is inadmissible not only under the State and Federal Constitutions but also under Tex. Code Crim. Proc. § 38.23. A 911 caller who identified herself as Leticia Barron reported a crazy man who was yelling at her inside the Best Western in Wylie, Texas. When asked to describe this man, Ms. Barron said he was wearing only a shirt and boxers. By the time officers had arrived, Ms. Barron was asked where Appellant was and stated "I believe he is in his room" The criminal actions were made to the Appellant not by him as the brutal beating given to Appellant without warning and without probable cause or provocation is the reason Appellant was denied access to video footage for over two years. Finally he was given a copy of the altered and edited footage that had been supplied by the Wylie PD to hide their criminal actions. This video compilation had been altered by removing segments that were incriminating also blurring video and removing all audio from the camera that would give a clear depiction of the true events that took place instead of the fabrication of lies and deceit making the victim appear to be a criminal and make themselves appear heroic for saving Ms. Barron from a crazed lunatic who would surely have raped and killed her if not for these knights in shining armor coming to her rescue. It is almost like the scene of a movie made early in the 20th Century called "Birth of a Nation" by D.W. Griffith. Same scenario, same amount of truth. One was a silent movie the other was silent also, as the audio was removed to prohibit the viewer from hearing the events as they took place. The original police report filed in court was later removed and replaced with one that would not conflict with the story they fabricated. Also the video

15

originally used as evidence in the trial was also substituted with another that had the  segments removed depicting events that did not happen by superimposing  different clips onto another as to make it  appear Appellant had done things that  would substantiate their claims. There would be no evidence connecting  Appellant to the commission of any offense other than testimony from officers.  Officers claimed Appellant was  trying to enter room when approached, yet there is no evidence to support this. The Trial Court erred in admitting this evidence which should have been suppressed pursuant to the Fourth  Amendment to the U.S. Constitution, Article 1 § 9 of the Texas Constitution and Tex. Code Crim. Proc. § 38.23. Accordingly the judgment in this case should be reversed

## PRAYER FOR RELIEF

Based upon the foregoing arguments, Appellant prays for and requests that this Court reverse and  enter a judgment of acquittal on Issue I, II, III, and IV

Respectfully Submitted,

Thomas Nix
/s/ Thomas Nix

## CERTIFICATE OF SERVICE

This is to certify that this document was sent to Appellee on 10/03/2014, pursuant to the Texas Rules of Criminal  and Appellant Procedure

Respectfully Submitted,

Thomas Nix
/s/ Thomas Nix

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface using MS Word in Times New Roman 14-point font for body text. The petition contains 4,424 words, excluding the parts exempted by Tex. R. App. P. 9.4(i) (1)

Respectfully Submitted,

Thomas Nix
/s/ Thomas Nix

January 1, 2014

Court of Appeals for the

Fifth District of Texas at Dallas

Re: Trial Numbers 003-82321-2010, 003-82323-2010 and 003-82324-2010

To Whom It May Concern:

I feel the need to let it be known some facts that have not been disclosed in either the State or Appellate briefs. I had no intention of representing myself in this case, but I had no way to pay an attorney $10,000.00 to represent at trial. I had asked the court if council could be appointed and I would pay but was denied. A few months before the case was set to go to trial I obtained work in Houston and was saving money to procure legal representation. The first setting was set for November and had just gotten trial motions granted a month earlier I went to court hoping to have continuance granted as I needed a little time to obtain council since I now would be able to financially be able to do so. Request was denied at pretrial contrary to States claim that I waited until mid-trial to ask for continuance. I explained to the court that I was not ready and was told if I did not appear ready for trial Monday morning a warrant would be issued for my arrest. I appeared for trial Monday morning again asking for continuance and was denied. I asked for co council to be appointed. Request denied. I emphatically tried to have case

18

continued to no avail.

Needless to say it was a very one sided affair and not having evidence needed to prove my innocence; I was convicted and given the maximum sentence possible. I served 15 months on a 12 month sentence. During the trial I encountered an attorney that happened to be walking by my vehicle. I explained my dire situation and asked if he would be able to represent me in an appeal. He said yes. He said he would do everything possible to have convictions overturned as quickly as possible I put my faith in him to do as he said. Altogether he was paid $5300.00 for the appeal and $800.00 to give court reporter for transcripts leaving balance of $800.00 for transcripts which I offered to pay. Was told no and everything was fine as far as case was concerned. I found out later that was not true and he let the court believe that the reason for the delay was I had not paid for clerks file. Bradley Voyles was paid in good faith the money he asked and did nothing but deceive the court and myself. I have documentation to prove my allegations I ended up with having the court appoint council after Mr. Voyles withdrew from the case. Jeremy Rosenthal and Kyle Therrian were to take over the appeal. Having concerns with Mr. Rosenthal being an officer of the court and Mr. Therrian recently hired from the District Attorney's office to prepare the brief. I told them I would like to have a copy of the brief a week before it was filed so I could go over it and give them my

input for changes I thought might be needed. After trying for a week to contact Mr. Rosenthal, I reached him on the day before the brief was due and the earliest I could meet with Mr. Rosenthal was Friday afternoon at 4:00 pm.This was the first opportunity I had to see what had been prepared. There were many things that I objected to and was told I needed to sign a paper they had prepared. I signed it with the understanding that changes would be made that I had asked for. No attempt was made to change brief and left office telling Mr. Rosenthal I strongly objected to what had been prepared and to ask for an extension to make changes that needed to be made. There was a 60 day extension granted giving time to make the changes needed. It took a week before I could get a copy of the brief filed and there were no changes that I had requested made from the original I had been given 2 months before. These are some of the issues I asked to be addressed in the brief: The main issue I had, was the video that was admitted into evidence was both altered and edited. At a hearing before trial was set, The State stated if video was to be admitted, she would have expert testify to its authenticity. Before trial I asked the State who was the expert being used to validate the video's authenticity and was told she did not have one. This was objected to and objection was denied. I later had an expert examine the video and was told it had definitely been edited and altered. There are seconds missing in several of the time stamps at a critical time where officers pulled me from my room and beat me almost to death. I was not

20

resisting as I was expecting housekeeping at door but officers were hiding behind carts used by housekeeping and when I opened door to tell housekeeper that I would be leaving shortly is when I was grabbed and assaulted by the two officers. The video from the camera that was closest to my room was also tampered with so it would be blurred to make it difficult to see what had really happened. There is nothing on any video to substantiate the officer's claims that I was trying to reenter my room when they arrived. Ms. Barron also stated in her testimony that when officers arrived and asked where I was, she said I was in my room, which I was. Video was superimposed on another to make it appear I was chasing Ms. Barron down hall which also did not happen. All audio was removed so it would not contradict officer's testimony about supposed interactions between officers and myself.

My efforts to obtain original video footage have been thwarted both by the motel and the State. I had asked both attorneys that have represented me to subpoena the motel for this evidence, but they made no effort in doing so.    If events happened as the State claims, why was I denied access to video after asking for it at least a dozen times? Why did the State not have expert verify its authenticity as she stated at earlier hearing if it was not tampered with? The State claims that if it was improperly admitted it caused no harm to my case. It did not

harm, it devastated my case. Another issue I had was my attorneys had no interest discussing problems with video, but were focused on using testimony of states witnesses which also validates States case as to events that did not happen. It appears my attorney was also trying to emphasize guilt rather than contest it. (Edited from original 11/10/14)

Sincerely,
Thomas Nix
/s/ Thomas Nix

This letter was written Jan 1, 2014 as concerns with my attorney's representation in this case led me to believe they intended to do whatever was necessary to make sure this case would not be reversed and try to focus on affirming the State's case instead of proving my innocence by exposing it for what it was, proof the truth is no longer used to determine guilt or innocence, but who can fabricate a better lie and convince a jury it's true. It appears perjury, withholding and tampering with evidence are no longer being prosecuted by the State as Their entire case consisted of nothing but perjured testimony and evidence withheld from defense that would prove his innocence and was used to convict him by removing what would reveal testimony made by officers was completely fabricated. From the first court appearance I have only requested access to motels surveillance equipment to acquire original video footage to prove events at motel

were completely contradictory to officer's testimony for almost five years, a minimum of 20 times.

Having made request of the District Attorney, Wylie PD, Best Western and by subpoena, I still have not been allowed access. Dellyn Lohmar was told she was not needed at court after offering to take Ms. Barron to court as I had made her aware that I had planned on having her subpoenaed for trial. Unfortunately she did not receive subpoena. The original police report admitted to the county clerk had been changed from the original to one that would better fit the events they had decided upon and the altered, edited and unoriginal video that had been admitted into evidence over the objections of defendant stating they gave a completely false impression of the true events, supposedly compiled by a person known as "Larry" who is unknown by the general manager of the motel where the Wylie PD testified they received it from. It had been substituted for one that had been edited again so the appellate court would not have it analyzed and see how it had been altered by superimposing clips to mislead jury to believe their fabricated events. I'm not asking the court to believe any of this as the truth. I'm only asking the court to at least inquire into some of these accusations as I have asked both attorneys that have represented me to investigate but they had no intentions to do so as they knew I would be proven to be speaking the truth and that was not acceptable. I really

23

hope this court does not ignore what I speak of as the Court of Appeals did and

give me the benefit of a doubt. Thank you for your consideration

Sincerely,

<u>Thomas Nix</u>
/s/ Thomas Nix

These pictures were taken five days after incident. Officers testified I had only minor scrapes and abrasions









**AFFIRM; and Opinion Filed August 5, 2014.**

**In The**

Court of Appeals Fifth District of Texas at Dallas

**No. 05-12-00095-CR**

**No. 05-12-00096-CR**

**No. 05-12-00097-CR**

**THOMAS LEE NIX, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 3 Collin County, Texas Trial Court Cause Nos. 003-82321-10; 003-82323-10; and 003-82324-10**

**MEMORANDUM OPINION**

Before Justices Bridges, Francis, and Lang-Miers Opinion by Justice Lang-Miers

A jury convicted Thomas Lee Nix of resisting arrest, indecent exposure, and unlawful use or possession of an inhalant/lacquer thinner1 and assessed jail terms of one year, 60 days, and 180 days, respectively. In eight issues, appellant challenges the sufficiency of the evidence to support his convictions, admission of various evidence, the denial of court-appointed counsel, and the denial of a continuance. We issue this memorandum opinion because all dispositive issues are settled in law. TEX. R. APP. P. 47.2(a), .4. We affirm the trial court's judgments.

---

1 The record shows that the terms lacquer thinner, paint thinner, and lacquer were used interchangeably during the trial.

**BACKGROUND**

In March 2010 Leticia Barron was working as the front desk receptionist at the Best Western hotel in Wylie when she heard a commotion on the first floor. Barron went to investigate and found appellant poking his head out of the door to his room, screaming for "Danielle." Barron checked the computer, saw no one by that name, and went back to tell appellant. Appellant then began calling out another woman's name. At that point, Barron began to think appellant "wasn't sure of what was going on." Appellant started laughing, began making nonsensical remarks, and said he was "shrinking." He got louder and told Barron to "come closer." He called her a "slut" and said he "loves sluts." As appellant stepped out of his room, Barron saw he was not wearing pants. Appellant told Barron he had a gun and was going to "get" her.

Barron fled down the hallway with appellant chasing after her. She was "scared" and thought appellant was going to rape her. She ran back to the desk in the lobby, grabbed her phone, went outside, and called 911. In the call, she reported that a "crazy man" dressed in a shirt and underwear was following her around the hotel. At trial, she testified she had assumed appellant had on underwear because he was wearing a shirt and she could only see his legs. But, she explained, she was "shocked and frightened" and did not "stop to take a full look at him." Barron testified she did not see appellant's genitals.

The police department is located across the street from the hotel, and Officers Mike Palko and Jason Smith arrived at the scene in less than two minutes. Barron, who was upset and crying, told the officers that a man was chasing her and

yelling at her. She led them to the hallway where appellant's room was located. Appellant was standing in the hallway and appeared to have locked himself out of his room. Barron pointed him out to officers, and Palko saw that he was wearing a long-sleeved shirt and was naked from the waist down. The officers called out to appellant. Barron left the area and did not witness the encounter with the police.

Palko identified himself as a police officer, and appellant responded, "Who the hell are you?" As the officers approached appellant, they noticed a "strong smell" of a paint product, which they later determined was paint thinner. Appellant had a blank stare on his face, was unsteady on his feet, had an "attitude," and was holding a yellow rag. Palko asked appellant if he was "huffing," and appellant turned away. Palko decided to detain appellant while he investigated and told appellant to put his hands behind his back. As Palko attempted to place appellant's hands behind his back to handcuff them, appellant "threw up both hands." Smith tried to grab appellant's arms, and appellant continued to resist. Palko performed a leg sweep, taking appellant to the ground on his stomach.

Smith testified that he was trying to effect an arrest of appellant once they took him to the ground, but appellant resisted. The officers told appellant several times to stop resisting and to give them his arms so he could be placed in handcuffs. Appellant continued to resist, kicking at the officers and choking Palko. The officers called for assistance, and Sgt. Randy Hooker was among the ones who responded.

Hooker said when he arrived at the scene he saw Palko and Smith trying to subdue appellant. He said appellant was naked from the waist down. Hooker said he

attempted to assist the officers, and appellant attempted to bite him on the leg. Ultimately, it took four officers to subdue appellant. At the end of the four-minute altercation, Smith had suffered a sprained hand. Palko and Smith said appellant was "very strong," which they suggested was one of the effects of inhaling paint thinner. Once appellant was in custody, the officers gained entry to his room. They were concerned about the heavy odor in the hallway and wanted to allow the fumes in appellant' room to disburse. Also, they said they needed to get clothing so appellant could be transported to jail. Once inside the room, officers saw an open can of paint thinner, small butane torches, and several pornographic DVDs. A pornographic movie was playing on the television. Barron also testified to seeing these same items. In addition to the testimony of Barron and the police officers, the State showed a DVD recording to the jury. The DVD contained seventeen clips. Four of the clips depicted appellant moving through the halls of the hotel as he followed Barron, going outside and coming back in, just before the police arrived. In the clips, appellant was wearing a long-sleeved blue shirt, and his legs were bare. The shirt was unbuttoned. There were also clips depicting the hallway encounter with the police, but the video was blurry.

## SUFFICIENCY OF THE EVIDENCE

In his first issue in each of these appeals, appellant challenges the sufficiency of the evidence to support his convictions. In reviewing a sufficiency challenge, we examine the evidence in the light most favorable to the verdict to determine whether

any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When analyzing the sufficiency of the evidence, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. We treat direct and circumstantial evidence equally. *Id*.

## Resisting Arrest

We begin with appellant's conviction for resisting arrest. To obtain a conviction for resisting arrest, the State was required to prove that appellant intentionally prevented or obstructed a person he knew was a peace officer from effecting an arrest by using force against that person. TEX. PENAL CODE ANN. § 38.03(a) (West 2011). The expression "effecting an arrest" in this statute encompasses reasonable actions of a police officer in bringing a person under the officer's control. *Shrader v. State*, 753 S.W.2d 733, 735–36 (Tex. App.—Austin 1988, pet. ref'd). It is not necessary to announce to a defendant that he is under arrest. *White v. State*, 601 S.W.2d 364, 365 (Tex. Crim. App. 1980). Such an announcement would be one circumstance for the factfinder's consideration in determining if and when an arrest took place. *Id*. The issue is whether the actor has forcibly interfered with the "arrest" transaction or process by which the officer has attempted to bring the actor under

control. *Shrader*, 753 S.W.2d at 735–36.

Here, the charge identified the peace officers as Smith, Palko, and Hooker and allowed conviction if appellant intentionally or knowingly prevented or obstructed any one of them from effecting his arrest. Appellant argues the evidence is insufficient because the officers consistently stated appellant was "merely detained." Although the evidence showed Smith and Palko initially intended to detain appellant while they continued to investigate, Smith said he was trying to effect an arrest after appellant was brought to the ground during the altercation. Smith testified appellant was repeatedly told to stop resisting and to give them his arms so they could handcuff him. Appellant refused and continued to kick at the officers. At the end of the altercation, Smith was treated for a sprained hand. This evidence was sufficient for a jury to conclude, beyond a reasonable doubt, that appellant intentionally prevented or obstructed Smith from effecting an arrest by using force against him. We resolve this issue against appellant.

**Indecent Exposure**

Appellant next asserts the evidence is insufficient to support his conviction for indecent exposure. A person commits the offense of indecent exposure if "he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." TEX. PENAL CODE ANN. § 21.08(a) (West 2011). The

offense is based on the defendant's actions and mental state, not the other person's comprehension. *Metts v. State*, 22 S.W.3d 544, 547 (Tex. App.—Fort Worth 2000, pet. ref'd). In other words, the State is required to prove that the defendant's genitals were exposed, not that the victim actually saw the defendant's genitals. *Cate v. State*, 124 S.W.3d 922, 931 (Tex. App.—Amarillo 2004, pet. ref'd) (per curiam). Evidence that the accused was naked from the waist down is sufficient to illustrate exposure. *Id.*

Here, the charge authorized the jury to convict appellant if it believed, beyond a reasonable doubt, that appellant intentionally or knowingly exposed his genitals with the intent to arouse or gratify the sexual desire of any person and was reckless about whether another person was present, namely Barron, who would be offended and alarmed by his act.

Appellant argues there was no evidence he exposed himself in the presence of Barron. To the contrary, Palko testified that when he and Smith arrived at the scene, Barron led them to the hallway where appellant was standing. Barron pointed appellant out as the man who had chased her and yelled at her, and Palko said appellant was wearing a long-sleeved shirt and was naked from the waist down. This evidence was sufficient to show that appellant exposed his genitals in Barron's presence.

Additionally, we note the jury had video evidence of appellant moving through the hotel hallway and going outside just before officers arrived. Appellant was wearing an unbuttoned, long-sleeved shirt and was bare-legged. Barron testified she did not

believe appellant had time to go to his room and remove his underwear in the brief time it took officers to arrive. From this evidence, the jury could have concluded that appellant was not wearing underwear as he chased Barron down the hall and could have inferred that he was exposing his genitals while doing so.

To the extent appellant argues that the evidence failed to show his exposure was with the intent to arouse and gratify the sexual desire of any person, we disagree. Intent to arouse or gratify can be inferred from appellant's conduct or remarks and the circumstances surrounding the act. *Cate*, 124 S.W.3d at 931. Barron testified appellant called her a "slut," said he loved "sluts," and demanded she come to him. Barron feared that appellant was going to try to rape her. This evidence was sufficient to show that appellant's exposure was with the intent to arouse and gratify his own sexual desire. As for his argument that there was no evidence that Barron was "offended or alarmed" by his exposure, the statute requires that appellant was reckless about whether another person was present who would be offended and alarmed by his act, not that the person was actually offended and alarmed. *See* TEX. PENAL CODE ANN. § 21.08; *see Metts*, 22 S.W.3d at 547 ("The victim's perception is not an element of the offense."). Regardless, the evidence showed that Barron fled when appellant began making lewd comments to her. She testified she was "shocked and frightened," so much so that she "didn't really stop and take a full look at him." She also testified she was offended and alarmed. From this evidence, a jury could rationally find that Barron would have been offended and alarmed by appellant's act of exposure. We resolve this issue against appellant.

–42–

**Unlawful Use or Possession of Inhalant**

Appellant also argues that the evidence is insufficient to support his conviction for unlawful use or possession of lacquer thinner. He contends the State failed to present evidence to support a conclusion that paint thinner or lacquer thinner is an abusable volatile chemical. We disagree.

A person commits this offense if he inhales, ingests, uses, or possesses an abusable volatile chemical with intent to inhale, ingest, apply, or use the chemical in a manner (1) contrary to directions for use and, cautions, or warnings appearing on a label of a container of the chemical; (2) designed to (A) affect the person's central nervous system; (B) create or induce a condition of intoxication, hallucination, or elation; or (C) change, distort, or disturb the person's eyesight, thinking process, balance, or coordination. TEX. HEALTH & SAFETY CODE ANN.§ 485.031 (West 2010). The charge tracked the language of the statute and defined "abusable volatile chemical" as "a chemical that is packaged in a container subject to the labeling requirements concerning precautions against inhalation established under the Federal Substances Act, as amended, and regulations adopted under that Act and is labeled with the statement of principal hazard on the principal display panel 'VAPOR HARMFUL' or other labeling requirement subsequently established under that ACT or those regulations." *See id*.§ 485.001(1)(A)(i).

When officers arrived on the scene, they found appellant in the hallway holding a yellow rag with a clear liquid or residue. There was a strong odor of a paint product. Palko testified that based on his training and experience he believed appellant was

"huffing" or inhaling some type of paint product. Palko testified that when the officers gained entry to appellant's hotel room, they found an open container of paint thinner. He agreed that paint thinner was also referred to as lacquer thinner. He testified that based on his training and experience huffing a paint thinner or lacquer thinner in a certain manner is designed (1) to affect appellant's nervous system; (2) to create or induce the condition of intoxication, hallucination, or elation; and (3) to change, distort, or disturb the person's eyesight, thinking process, balance or coordination. When asked if there were directions for use, cautions, or warnings that appeared on the label of that container, Palko responded: "Yes, there should be on the label powerful - - should say something to the effect of harmful if not met by the intended use or something like that. Also flammable." Palko testified that lacquer thinner is an abusable volatile chemical. Based on his observations of appellant that day, Palko believed appellant was intentionally or knowingly inhaling, ingesting, or using it in an unintended manner. He explained that appellant had a blank stare, was unsteady on his feet, was holding a rag with liquid in an odor-filled hallway, and had an attitude.

Smith also testified that lacquer thinner is an abusable volatile chemical. He said when he approached appellant, he smelled paint or paint thinner, leading him to believe appellant had been sniffing or huffing a paint product. And Sgt. Randy Hooker testified that he photographed the container of lacquer thinner found in appellant's room and was aware that the container had directions for use, cautions,

and warnings.[2] He referred to it as a "health warning." He said the police department did not keep the container because it does not have a place to store volatile chemicals and the container was dangerous and flammable.

Having considered this evidence, we conclude that a rational jury could have determined that the lacquer thinner found in appellant's room was an abusable volatile chemical, and there were cautions and health warnings on the back of the container stating the product was harmful if not used as intended. Further, there was sufficient evidence to establish that appellant inhaled the product contrary to the directions for use, cautions, and warnings, and did so in a manner designed to induce intoxication.

Our record contains the original photograph of the container admitted into evidence at trial, and it is not possible to read the warnings on the back of the container

In reaching this conclusion, we reject appellant's suggestion that the officers' testimony that the product was an abusable volatile chemical was nothing more than a "bare conclusion" that was of "no evidentiary value." The officers testified that the substance was dangerous and flammable and the container had warnings on its label. One officer described the statement as a "health warning." We resolve this issue against appellant

## ADMISSION OF EVIDENCE

Appellant next complains that the trial court erred by admitting (1) evidence discovered by officers pursuant to a warrantless search of his room, (2) an improperly authenticated, unoriginal compilation of "selected highlights" of video footage, and

(3) any evidence discovered after he was "unlawfully detained."

We begin with the evidence discovered after a warrantless search of appellant's room. Appellant argues the search violated his rights under the Fourth Amendment because it was not justified by one of the exceptions to the warrant requirement, rendering the evidence inadmissible. Appellant does not identify specific evidence, but it appears he is complaining about the photographs showing various items in the room.

To preserve error in admitting evidence, a party must make a proper objection and get a ruling on that objection. TEX. R. APP. P. 33.1. Additionally, a party must object each time the inadmissible evidence is offered or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

We need not determine whether the State proved an exception to the warrant requirement because evidence of the items found in the room was admitted elsewhere without objection. In particular, Barron testified that when she went in the room after appellant's arrest, she saw what looked like paint thinner, blow torches of different sizes, and "a lot of porn." Additionally, Hooker testified that the room contained an open can of paint thinner, small butane torches, an empty bag of what later tested positive for methamphetamine, a glass pipe, and pornography. This testimony described the same, and more, evidence depicted by the photographs. Because it was admitted without objection, any error in admitting the photographs was cured. *See Valle*, 109 S.W.3d at 509–10.

Appellant next argues that the trial court abused its discretion by admitting video evidence that he contends was improperly authenticated, unoriginal, and incomplete. State's exhibit 2 was a DVD containing multiple clips of appellant moving through the hotel and outside before police arrived and of his encounter with the police that were captured on the hotel's surveillance system. At the time the exhibit was offered, appellant said he had no objections to its admission. By stating no objection when the exhibit was offered, appellant did not preserve this issue for our review. *See* TEX. R. APP. P. 33.1.

Appellant also contends that the trial court erred by admitting any evidence "discovered after officers unlawfully detained" him. He argues the officers did not have reasonable suspicion to detain him and, but for the unlawful detention, there would be no evidence connecting him to the commission of any offense. But appellant does not direct us to any place in the record where he complained about the lack of reasonable suspicion to detain him. The record does not reflect that appellant filed a motion to suppress nor did our review show an objection to any evidence on the basis that the officers lacked reasonable suspicion for the initial detention. *See* TEX. R. APP.P. 33.1(a) (stating requirements to preserve complaint for appellate review); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (if defendant fails to preserve error at trial, he may not later assert that error on appeal). We conclude that appellant has not preserved this issue for our review.

**RIGHT TO COUNSEL**

In each of the cases, appellant complains he was unconstitutionally denied his right

to court-appointed counsel. He argues that the sole factor for denying him court-appointed counsel "appears to be income exceeding 125% of the 2008 federally determined poverty level." He argues that other factors should have been considered, and that he "was effectively denied his Sixth Amendment right to representation and rights under Tex. Code Crim. Proc. § [sic] 26.04."

Article 26.04 establishes procedures for appointing counsel to represent indigent defendants. TEX. CODE CRIM. PROC. ANN. art. 26.04 (West Supp. 2013). Factors a trial court considers in making this determination include the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant. *Id.* art. 26.04(m). The trial court determines indigency on a case-by-case basis as of the time the issue is raised and not as of some prior or future time. *Gray v. Robinson*, 744 S.W.2d 604, 607 (Tex. Crim. App. 1988). A trial court does not have a duty to appoint counsel, however, until the defendant shows he is indigent. *Id.* The defendant must first make a prima facie showing of indigence. *McFatridge v. State*, 309 S.W.3d 1, 6 (Tex. Crim. App. 2010). If the defendant does so, the State may present evidence that the defendant is not indigent. *Id.* After the defendant makes a prima facie showing of indigency, a trial court's determination that the defendant is not indigent may be upheld on appeal only if the record contains evidence supporting this determination. *Id.*

In this case, the appellate record contains two documents, both entitled "Indigency Flow Sheet," reflecting the court made two evaluations of appellant's indigency

status. The first evaluation showed appellant had income at 144% of the poverty level; the second evaluation showed he had income at 155% of the poverty level. Both documents indicate that appellant provided affidavits of indigency and that the affidavits were reviewed. But the affidavits are not a part of our appellate record, and the only record of a pretrial hearing in which appellant's indigency status was discussed shows that appellant did not qualify for a court-appointed attorney. Consequently, the appellate record does not show that appellant made a prima facie case of his indigence, and so the trial court was under no duty to appoint an attorney to represent him. *See Gray*, 744 S.W.2d at 607.

Within this same argument, appellant contends that his waiver of counsel and decision to proceed pro se were based on a "false dichotomy under the law" and were not intelligent and voluntary. Appellant bases this argument on the trial court's alleged error in determining he was not indigent. But as we previously concluded, appellant has not shown the trial court erred by denying him court-appointed counsel. Consequently, the record does not support appellant's arguments. We resolve this issue against appellant.

## MOTION FOR CONTINUANCE

In each case, appellant complains the trial court erred by failing to continue the trial so that he could secure the attendance of the hotel manager in an effort to obtain "missing" video footage.

Articles 29.03 and 29.08 of the Texas Code of Criminal Procedure set out the procedures for requesting a continuance. Article 29.03 states: "A criminal action may

be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006). And Article 29.08 states: "All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08. The court of criminal appeals has construed these statutes to require a sworn written motion to preserve appellate review of a trial court's denial of a motion for a continuance. *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). Consequently, if a party makes an unsworn oral motion for a continuance and the trial court denies it, the party forfeits the right to complain about the judge's ruling on appeal. *Id.*

Here, appellant made an unsworn oral motion for continuance, which the trial court denied. Because appellant did not file a sworn written motion as required by the code of criminal procedure, he has forfeited his right to complain about the trial court's ruling. *See id.* We resolve this issue against appellant.

## CONCLUSION

We affirm the trial court's judgments.

/Elizabeth Lang-Miers/
ELIZABETH LANG MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b) 120095F.U05